NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN CALACE, | : : : | Civil Action No. 08-4192 (PGS) |
| Plaintiff, | : : |  |
| v. | : : | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | : : |  |
| Defendant. | : : |  |

This matter comes before the Court pursuant to section 405(g) of the Social Security Act as amended, 42 U.S.C. 405(g) ("Act"). Plaintiff, John Calace ("Plaintiff" or "Calace") seeks a review of the final decision of the Commissioner of Social Security Administration denying his claim for Supplemental Security Income Disability after a hearing considering Judge Greenaway's decision to remand (see below). The Court has jurisdiction to review this matter under Section 405(g) of the Act and decides the matter without oral argument.

Mr. Calace's claims have considerable procedural history. This includes a decision by Hon. Joel Pisano, U.S.D.J. affirming a denial of benefits for the period of August 11, 1998 through December 6, 2002. *Calace v. Commissioner*, Civil Action No. 03-3563 (JAP)[1]. More pertinent to this matter is the decision of the Hon. Joseph Greenaway, U.S.D.J. remanding an ALJ decision denying benefits dated February 3, 2006 for the period April 3, 2001 to present.

---

[1] This decision was never appealed. It is final.

*Calace v. Commissioner*, Civil Action No. 04-2613 (JAG).  On February 3, 2006 Judge Greenaway issued an opinion remanding the matter "so that the Administrative Law Judge may develop the record and explain the findings at step three of the analysis, including an explanation of the determination that the Plaintiff's impairment does not meet or medically equal one of the listed impairments". (Greenaway Opinion, p. 17).  Within that Greenaway Opinion, many of the findings of the ALJ were affirmed.  To the extent that the Greenaway Opinion made such rulings, I will not reconsider them.

     The remand hearing was held before Judge Lissek in December, 2006.  On January 26, 2007 the ALJ issued a partially favorable decision finding that Plaintiff was not disabled prior to October 26, 2005, but when Plaintiff turned 50 years old, on the said date, Plaintiff was found disabled utilizing Medical-Vocational Rule 201.08 at Step 5 of the disability determination process.  More specifically, the ALJ found:

> Beginning on October 26, 2005, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the plaintiff could perform.

A finding of disability was reached by direct application of Medical-Vocational Rule 201.08.  Therefore, the only issue to be determined is whether Plaintiff was disabled for the previous years (April 3, 2001 - October 25, 2005) due to the step 3 analysis.[2]

---

[2] The date of the onset of disability is confusing. Judge Pisano ruled that Mr. Calace was not disabled through December 6, 2002, while here Plaintiff seeks benefits from April 13, 2001.  Judge Pisano's judgment should control.

2

I.

The facts are substantially set forth in both Judge Pisano's and Judge Greenaway's opinions. They are incorporated as if set forth at length herein. Some additional facts from the hearing after remand are set forth below.

By way of background, on December 19, 2004, Martin Fechner, M.D., testified as a medical expert witness. (R. 386-405). At that time, Dr. Fechner found that plaintiff's hypertension was well controlled. Plaintiff was overweight, and that Plaintiff's sinus pauses had resolved. (R. 386-390). He testified there were no objective findings which suggest that plaintiff met the pulmonary or sleep apnea listings. Dr. Fechner believed that plaintiff could do sedentary work including lifting 10 pounds occasionally and standing or walking for two hours a day. (R. 393).

Dr. Fetchner appeared at the remand hearing two years later (December 19, 2006). He testified that Plaintiff's hypertension and diabetes were "well controlled" , and there was "no critical coronary artery disease". (R. 390). Plaintiff's pacemaker was working well. Plaintiff continued to use a CPAP machine to control his sleep apnea. As Dr. Fechner noted, Plaintiff is sometimes fatigued due to lack of sleep, but it is not "serious enough at this point" to be a concern. There was no pulmonary hypertension. During his testimony Dr. Fechner added depression as a diagnosis with little explanation. It was Dr. Fetchner's opinion that Plaintiff could lift 10 pounds occasionally, and stand or walk for two hours a day; but Plaintiff's "irregular heart rate prevented medium to heavy lifting despite the pacemaker's success.

3

II.

According to Plaintiff, "the primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence." Generally, a claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. *Id*. at §423(d)(2)(A). *See Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); see 42 U.S.C. §405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. §404.1520. First, the plaintiff must establish that he is not currently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. See *Plummer*, 186 F.3d at 428 (citing *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). In step two, if the plaintiff is not working, he must

4

establish that he suffers from a severe impairment.  20 C.F.R. §404.1520(c).  If plaintiff fails to demonstrate a severe impairment, the Administrative Law Judge (ALJ) must deny disability benefits.  *Id.*

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" located in 20 C.F.R. §404, Subpart P, Appendix 1.  *Id.*; *Burnett*, 220 F.3d at 118-20.  If it does, the plaintiff is automatically disabled.  20 C.F.R. §404.1520(e).  But, the plaintiff will not be found disabled simply because he is unable to perform his previous work.  *Id.*  The Third Circuit has required that in determining whether the plaintiff's impairments meet or equal any of the listed impairments, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning.  *Burnett*, 220 F.3d at 119-20.  A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review."  *Id.*

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to steps four and five.  *Plummer*, 220 F.2d at 428.  In step four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work."  *Id.*; see *Sykes*, 228 F.3d at 263; 20 C.F.R. §404.1520(d).  This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity ("RFC"); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work.

*Burnett*, 220 F.3d at 120.  The plaintiff bears the burden of proof for steps one, two and four of this five-step test.  *Sykes*, 228 F.3d at 263.

If the plaintiff cannot perform the past work, the analysis proceeds to step five.  In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform.  See 20 C.F.R. §404.1520(f); If the commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *Yuckert*, 482 U.S. at 146 n.5); *Burnett*, 220 F.3d at 118-19; *Plummer*, 186 F.3d at 429; *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986).  In demonstrating there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience.  20 C.F.R. §404, Subpt.P, App.2.  However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments, "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels."  *Sykes*, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. *Id.* at 270-71, 273-74; see also *Burnett,* 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including… testimony of a vocational expert").  If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.  20 C.F.R. §404.1520(f).

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record.  See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g)*; Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*" Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); see *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.  Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 n.9

The reviewing court must view the evidence in its totality.  *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - - particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to

the ALJ's factual determinations. *Williams v. Sec'y of Health and Human Servs.*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating that the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act (42 U.S.C. §401, *et seq*. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See,* 42 U.S.C. §(d)(5)(a). Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . .[one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b). *Hartranft* , 181 F.3d at 362. In *Hartranft*, claimant's argument that the Administrative law judge failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

### III.

In this case, ALJ Lissek's decision is based upon substantial evidence at step 3 of the analysis. More importantly, Judge Greenaway remanded in order that the ALJ "may develop the

record and explain the findings at step three of the analysis, including an explanation of the determination that Plaintiff's impairment does not meet or medically equal one of the listed findings." (Greenaway Opinion at p. 17). The ALJ specifically addressed that issue in detail. The ALJ stated:

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d).
>
> Particular attention was given to the listings in sections 3.00 (Respiratory System) and 12.00 (mental disorders). Specifically, the medical expert, Dr. Fechner, testified that the claimant's conditions failed to meet or equal any medical listing. Listings 3.02, 3.09 and 3.10 were analyzed by Dr. Fechner, but the evidence of the record failed to demonstrate any of the required criteria. The record contained no evidence of chronic pulmonary insufficiency or any of the necessary documented test results as required under 3.02, 3.09 and 3.10. In fact, Dr. Fechner testified that the claimant's cardiac catherization results were normal and that his pacemaker seemed to be working well. Dr. Fechner further testified that the claimant's diabetes was under control and that his sleep apnea and obesity of 242 pounds were not that severe either. The claimant's stress test was noted to be quite good and so were his EKG's. Dr. Fechner noted that the evidence failed to demonstrate any pulmonary artery pressure greater than 40 mm Hg or any arterial hypoxemia and he opined that he was confident in his opinion that the claimant's condition did not meet or equal any of the medical listings. Accordingly, based on the medical evidence and the analysis offered through Dr. Fechner's testimony, the claimant's conditions are not found to meet or equal any medical listings.

The ALJ found that "the evidence fails to establish any impairments involving hypertension, gastritis, diabetes, or an anxiety depression syndrome that have any greater than a slight or minimal effect on his ability to perform basic work activities. Thus, these later impairments are not found to be severe." There is much evidence substantiating the ALJ's decision. At the

9

remand hearing, Dr. Fechner found Plaintiff's hypertension was "well controlled" and sinus pauses had resolved. There was no objective finding of pulmonary illness which is required to meet a listing for sleep apnea. Dr. Fechner further found that Plaintiff's EKG's and stress test were satisfactory. In Step 3 of the test, this evidence more than demonstrates that the ALJ's decision was based on substantial evidence. Moreover, the ALJ gave "little weight" to Plaintiff's cardiologist, Dr. Iuzzolino, determination regarding Plaintiff's's inability to work because the doctor described symptoms for which there were "no objective clinical findings" to support those symptoms. In mid-2002, an exercise stress test and a nuclear stress found that Plaintiffs results were normal.

IV.

Plaintiff argues that the Commissioner did not carry the burden of proof at step five of the analysis because the use of vocational rules was inappropriate. Instead of using the "grids", Plaintiff argues that a vocational expert should have opined on Plaintiff's ability to do perform work. The issue was reviewed in Judge Greenaway's Opinion. Judge Greenaway wrote:

> Plaintiff's final argument is that ALJ Lissek erred by utilizing the vocational rules to direct her conclusion of non-disability. In evaluating a claimant's ability to work in step five of the sequential analysis, both exertional and non-exertional limitations must be included. *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000). When determining the effect of the claimant's nonexertional imitations, the ALJ cannot rely exclusively on the medical-vocational guidelines or "grids" found in the regulations but must supplement the grids by relying on "the testimony of a vocational expert or other similar evidence such as a learned treatise." Sykes, 228 F.3d at 273. The requirements in Sykes are inapplicable when there is no objective medical evidence of a non-exertional limitation. Since the medical evidence on record establishes that the Plaintiff

        does not have a non-exertional limitation, Sykes is inapplicable. Therefore, Plaintiff's claim that  the ALJ erred by utilizing the vocational rules is without merit.

In addition, Judge Lissek addressed "the claimant's mental status." The ALJ ruled that a psychiatric disability must demonstrate abnormalities which "limit an individual's ability to perform basic work activities", and an assessment of one's ability to understand, carry out, remember instructions" and respond to supervisors and other staff and customers as necessary. Judge Lissek ruled that such abnormalities were not diagnosed and there was no mental disability.  Accordingly, Plaintiff's mental condition was a non-exertional limitation. Considering Judge Greenaway's and ALJ Lissek's opinion, the issue has been addressed correctly.

V.

    Finally, Plaintiff argues that other non-exertional limitations including obesity required use of a vocational expert at step five of the analysis.  Again, this issue was addressed by Judge Greenaway in broad terms. He noted that the "ALJ found that the Plaintiff's exertional and non-exertional limitations did not preclude all work activity, and consequently that he retains the residual functional capacity to perform a full, complete and wide range of sedentary work."

   There is no reason to reopen Judge Greenaway's decision.

   As a result, the decision of the Commissioner is affirmed, the Complaint is dismissed.

                                  *s/Peter G. Sheridan*
                                  PETER G. SHERIDAN, U.S.D.J.

September 24, 2008